UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

MARK J. HARRIS and AMY HARRIS,                    Case No. DK 04-02258
                                                   Hon. Scott W. Dales
                                                   Chapter 13

              Debtors.
_____/

## OPINION REGARDING DEBTORS' MOTION TO AVOID LIEN

In their Chapter 13 plan, Debtors Mark and Amy Harris agreed to pay their unsecured creditors a *pro rata* share of property remaining after payment of nine specifically named secured creditors. The court confirmed the Debtors' plan in September 2004, after the Debtors addressed the objection of the Chapter 13 Trustee -- the only person to object to the plan. Capitol Indemnity Corp. ("Capitol"), a creditor included on Schedule F as one of the "Creditors Holding Unsecured Nonpriority Claims" but not specifically named in the plan, contends that it continues to hold a secured claim against the Debtors' residence in Bloomingdale, Michigan (the "Residence") and sale proceeds from adjacent land (the "Vacant Land"). The Debtors argue that upon confirmation, the Residence and the Vacant Land vested in them free and clear of Capitol's interest in the real estate.

The court concludes that notwithstanding plan confirmation, Capitol retained whatever property interest it may have had in the Residence and Vacant Land. Accordingly, the court will enter an order denying the Debtors' Motion for Entry of Order Discharging Claims of Interest of Capitol Indemnity Corporation (DN 175, the "Motion").[1]

---

[1] Capitol's response to the Motion (the "Response") and brief appear on the court's docket as DN 178 and 180.

### Jurisdiction

The court has jurisdiction of the Debtors' case pursuant to 28 U.S.C. § 1334(a), and this contested matter falls within the court's "core jurisdiction" under 28 U.S.C. § 157(b)(2)(K) and (L). In addition, the court has jurisdiction to interpret its own orders. Travelers Indemnity Co. v. Bailey, 129 S.Ct. 2195, 2205 (2009); Local Loan Co. v. Hunt, 292 U.S. 234, 239 (1934).

### Background

The following facts are not contested, except as otherwise noted. Prepetition, Mark and Amy Harris (the "Debtors") were involved in the construction trade, and entered into a surety or bonding relationship with Capitol. In exchange for Capitol's agreement to serve as surety, the Debtors allegedly agreed that if Capitol were called upon to honor its bond, Capitol's resulting claim would be secured by an interest in the Debtors' real estate. On April 9, 2003, Capitol filed documents entitled "Claim of Interest" with the Register of Deeds in Van Buren County, Michigan, where the Residence and Vacant Land are situated. The Debtors contend they were not aware of Capitol's filing until sometime after confirmation. The parties agree that these Claims of Interest cloud the Debtors' title.

The Debtors filed a joint Chapter 13 bankruptcy petition on February 26, 2004. They timely filed schedules and a matrix. On Schedule F, the Debtors listed Capitol as a creditor holding a disputed, contingent, unliquidated, and unsecured claim. They also included Capitol on the creditor matrix, and served the case commencement notice on Capitol at its address in Madison, Wisconsin. The Debtors filed a proposed Chapter 13 Plan on March 26, 2004 and served the document on all creditors, including Capitol. The Plan: (1) did not specifically mention Capitol by name; (2) did not state that Capitol retained its lien; and (3) did not treat Capitol as a secured creditor in any way. In other words, the only treatment of Capitol's claim in

the Plan was inferentially as an unsecured creditor. Neither Capitol nor any other creditor objected to confirmation. In response to an objection by the Chapter 13 Trustee, the Debtors filed a Second Amended Chapter 13 Plan (DN 65, the "Plan") on September 23, 2004. A text order confirming the Plan was entered by the court on September 28, 2004 (DN 71).

The Plan includes a section entitled "Secured Creditors" in which the Debtors prescribe detailed treatment of nine specifically-identified secured creditors, the first four of whom claimed a security interest in the Debtors' Residence. Indeed, the Plan stripped off a fourth residential mortgage held by Huntington National Bank, presumably because the collateral value did not support the encumbrance.[2] Immediately below the section dealing with the secured creditors, the Plan included a section entitled "Unsecured Creditors" which provided as follows:

> Unsecured creditors holding allowable claims shall receive a *pro rata* share of funds paid to the Trustee after payment of the secured and priority claims to be paid under the Plan. The percentage dividend will be determined by the allowed claims filed.

See Plan, at p.4, § II(C). The Plan also contained detailed provisions for the assumption of a land contract involving the Vacant Land, and payment of the sale proceeds to the Chapter 13 Trustee for the benefit of unsecured creditors. Capitol did not object to the Plan, nor did it file a proof of claim.

Several months after the court confirmed the Plan, the Debtors sought authority to sell the Vacant Land pursuant to the land contract they assumed under the Plan. See Debtors' Motion for Entry of Order Authorizing Sale of Real Estate to Michael and Wendy Douglas, filed March 9, 2005 (DN 90). For the first time, Capitol stepped forward and opposed the sale by claiming it had a property interest in the Vacant Land pursuant to its prepetition Claim of

---

[2] According to Huntington National Bank's proof of claim, the bank recorded its mortgage in 2001, nearly two years before Capitol filed its Claims of Interest in the land records. Curiously, accepting Capitol's argument in this case might permit Capitol to improve its priority *vis a vis* Huntington National Bank. But see 11 U.S.C. §§ 506(d) & 551.

3

Interest. After some wrangling, Capitol and the Debtors agreed that Capitol's Claim of Interest against the Vacant Land would attach to the sale proceeds, subject to further court order.[3]

The Debtors have performed under the Plan for nearly five years. They have completed payments and are on the verge of receiving a discharge under 11 U.S.C. § 1328(a). Relying on the vesting language of 11 U.S.C. § 1327(c) and their confirmed Plan, the Debtors believe their Residence remained encumbered only as specifically provided in the Plan. After fully performing under the Plan, the Debtors were surprised to learn that Capitol is now claiming an interest in their Residence to the extent of approximately $150,000.00.

On May 19, 2009, the Debtors filed this Motion for an order declaring that whatever interest Capitol may be asserting against the Residence and the Vacant Land or its sale proceeds was extinguished upon confirmation when the properties vested in the Debtors free and clear of any claims or interests of the creditors provided for under the Plan. See 11 U.S.C. § 1327(b) and (c). Capitol contends that because the Debtors failed to take affirmative action to avoid its lien or interest, the lien "passes through bankruptcy unaffected," citing Dewsnup v. Timm, 502 U.S. 410 (1992) and other authorities. Capitol summarized its argument as follows: "[t]he Debtors are really asking this Court to disregard Bankruptcy Rule 7001(2), which requires the invalidation of a lien be accomplished through an adversary proceeding, and to ignore Capitol's procedural due process rights." See Brief in Opposition to Debtors' Motion for Entry of Order Discharging Clams of Interest of Capitol Indemnity Corporation, at p. 2.

---

[3] The Debtors' Motion seeks a ruling as to the proceeds of the sale of the Vacant Land as well as the Residence.

4

<u>Analysis</u>

Most Chapter 13 plans, when referring to the treatment of claims, specifically identify secured creditors but refer only generally to the unsecured creditors.  Language such as "the debtor will pay a 10% dividend to unsecured creditors" or "unsecured creditors will share *pro rata* the funds remaining after payment of secured and priority claims" is not uncommon, and is universally held to "provide for" unsecured claims for purposes of a Chapter 13 discharge.  <u>See</u> 11 U.S.C. § 1328(a).  In other words, specific enumeration of unsecured creditors in a plan is not necessary for the court to find that a plan provides for this class of claims.[4]

This precise identification of specific secured claims coupled with a general categorization of unsecured claims is a useful and largely effective Chapter 13 drafting convention that works well when there is no dispute regarding which creditors are secured or unsecured, or when the parties are aware of a dispute about a creditor's secured status before confirmation.  However, when the dispute about a creditor's secured claim arises post-confirmation, this drafting convention raises difficult issues of statutory interpretation and constitutional law.  Courts are divided about the degree of specificity that Chapter 13 plans and the Due Process Clause require with respect to secured claims.  <u>Compare</u> <u>Cen-Pen Corp. v. Hanson</u>, 58 F.3d 89 (4th Cir.1995) <u>with</u> <u>In re Pence</u>, 905 F.2d 1107 (7th Cir. 1990); <u>see generally</u> <u>In re Hudson</u>, 260 B.R. 421 (Bankr. W.D. Mich. 2001) (discussing issue in the context of conflict between claims administration and confirmation processes and rejecting <u>Cen-Pen</u>); Eric S. Richards, Due Process Limitations on the Modification of Liens Through Bankruptcy Reorganization, 71 Am.Bankr.L.J. 43, 64-101 (1997) (grouping reported decisions within three

---

[4] Although an unsecured creditor does not enjoy a specific interest in estate property in the same way a secured creditor does, the unsecured creditor nevertheless has a chose in action against the debtor (and his bankruptcy estate) which is certainly a type of property interest protected by the Due Process Clause.  Were it otherwise, there would be no point in giving unsecured creditors notice of bankruptcy proceedings.

categories); Keith M. Lundin, Chapter 13 Bankruptcy § 233-1, 3rd Edition (Bankruptcy Press, Inc. Nashville, TN 2007). The controversy in this case between the Debtors and Capitol epitomizes the problem.

As a matter of statutory construction, the court must decide whether the Plan "provides" for Capitol's claim within the meaning of 11 U.S.C. § 1327(c). Stated differently, the court must decide whether the vesting of the Vacant Land and the Residence that concededly occurred under § 1327(b) liberated the real estate from any interest that Capitol now claims. Second, assuming the real estate vested in the Debtors "free and clear" under the statute, the court must determine whether such vesting comports with the Due Process Clause.

<u>Statutory Issue: Whether the Plan "Provides For" Capitol's Claim</u>

From the parties' briefs and their statements at the hearing on the Motion, the statutory issue is whether Capitol's claim or interest is "provided for" by the Plan, within the meaning of Section 1327, which states as follows:

> Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any *claim or interest* of any creditor provided for by the plan.

11 U.S.C. § 1327(c) (emphasis added). The section of the Plan pertaining to secured creditors plainly omits any reference to Capitol or its claim. Indeed, the Plan never mentions Capitol by name, and certainly does not provide for retention of its interest, as required by 11 U.S.C. § 1325(a)(5). If Capitol truly had a secured claim prior to confirmation, this treatment would be inconsistent with the Bankruptcy Code. In addition, to the extent the Plan challenged the "validity, priority, or extent" of Capitol's interest, its treatment would also be contrary to the Federal Rules of Bankruptcy Procedure. Indeed, the gist of Capitol's argument is that the court should not permit the Debtors to accomplish lien invalidation through the plan confirmation

6

process because the Bankruptcy Rules require an adversary proceeding to achieve this result. Had Capitol made this argument prior to confirmation, it probably would have carried the day.[5]

Nevertheless, the statute requires the court to ask only whether the Plan provided for Capitol's claim, not whether it provided for Capitol's *secured claim* (a term used throughout the Bankruptcy Code),[6] and not whether the Plan complied with the Bankruptcy Code.[7]   Section 1327(c) uses the phrase "claim or interest." Because the word "or" is a disjunction and should be construed as a disjunction, the property of the estate vests in the Debtor free and clear if the Plan either provides for the claim or provides for the interest. See 11 U.S.C. § 102(5).

According to the Debtors, the Plan "provides for" Capitol's claim by including Capitol inferentially within the Plan's discussion of unsecured creditors. As noted above, the Debtors listed Capitol as an unsecured creditor on Schedule F, and included Capitol on the creditor matrix or service list. Capitol admits that the Plan "provided for payment of unsecured creditors, including the claims of Capitol Indemnity Corp. from a *pro-rata share* of funds paid to the trustee after payment of the secured and priority claims to be filed under the Plan." Compare Motion at ¶6 with Response at ¶6.

To understand what it means to "provide for" a claim, the court looks to other Chapter 13 provisions for guidance. Significantly, Congress used the same "provided for" language in the Chapter 13 provisions dealing with discharge of "debts." See 11 U.S.C. § 1328(a) (the court shall grant the debtor a discharge "of all debts provided for by the plan . . ."); Rake v. Wade, 508

---

[5] But see footnotes 2 and 10.

[6] The Bankruptcy Code defines a "claim" as any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. See 11 U.S.C. § 101(5). "Claims" are either secured or unsecured, depending upon the validity under bankruptcy and non-bankruptcy law, but also upon collateral values. See id. § 506(a).

[7] The question of whether a plan complies with the Bankruptcy Code is usually addressed at confirmation, not in a collateral attack on the confirmation order or plan. See 11 U.S.C. § 1325(a)(1) (confirmation requirements); id. § 1330 (setting aside confirmation order); Fed. R. Bankr. P. 9024 (limiting application of Fed. R. Civ. P. 60 in cases collaterally attacking Chapter 13 confirmation orders).

U.S. 464, 474 (1993).  Therefore, in answering the question of whether the Plan provided for the claims of Capitol, the inquiry should be the same under 11 U.S.C. § 1328(a) and § 1327(c).  See United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371 (1988) (statutory terms are often "clarified by the remainder of the statutory scheme - because the same terminology is used elsewhere in a context that makes [their] meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law"); but see In re Jones, 238 B.R. 338, 344 (Bankr. W.D. Mich. 1999) ("While a secured creditor is bound by a plan's provisions regarding a debtor's personal liability, a secured creditor's in rem rights are another matter").

Accepting this premise, it is impossible to hold that the Debtors' Plan "provided for" Capitol's in personam rights and discharged its claim pursuant to § 1328(a) simply by making a categorical reference to "unsecured creditors," yet failed to "provide for" Capitol's claim for purposes of extinguishing its lien.  In re Cody, 246 B.R. 597 (Bankr. E.D. Ark. 1999); Crites v. Oregon (In re Crites), 201 B.R. 277 (Bankr. D. Or. 1996); In re Daniel, 107 B.R. 798 (Bankr. N.D. Ga. 1989).  A more logical reading, as a matter of statutory interpretation given the nearly identical language in Sections 1328(a) and 1327(c), is that both Capitol's in personam and in rem rights were either both preserved through the Plan or they were both lost.[8]

The court concludes that, as a matter of statute, the Debtors' Plan "provided for" both components of Capitol's claim, in rem and in personam -- perhaps erroneously and perhaps in violation of other statutes and rules -- but provided for Capitol's claim nevertheless.

---

[8]  The textual differences between the provision at issue -- 11 U.S.C. § 1327(c) -- and its Chapter 11 analog -- 11 U.S.C. § 1141(c) -- also provide a useful comparison.  With certain exceptions not relevant here, Section 1141(c) provides that after confirmation "the property dealt with by the plan" revests in the debtor free and clear of claims and interests.  The vesting language of Section 1327(c), in contrast, depends not upon whether the plan "deals with" the estate's property (though the Debtors' Plan did deal with the Residence and the Vacant Land), but instead upon whether the plan provides for the claims or interests of creditors.  This language leads the court to focus on whether the Plan provides for Capitol's claim -- the same inquiry the court would make to determine whether Capitol's in personam claim were discharged under the Plan and 11 U.S.C. § 1328(a) as noted below.

The fact that the Debtors may have, wittingly or unwittingly, ignored other statutory protections such as the lien retention requirement of 11 U.S.C. § 1325(a)(5) or the requirement of Fed. R. Bankr. P. 7001(2) that liens cannot be invalidated without an adversary proceeding is of no moment, so long as the Due Process Clause is not offended, because even erroneous judicial determinations are binding until set aside. Stoll v. Gottlieb, 305 U.S. 165, 170 (1938); Hudson, 260 B.R. at 442. Courts make factual and legal errors from time to time, but these errors do not usually deprive the court's orders of their efficacy or finality.

Capitol's arguments in this matter put the principle of finality on a collision course with the Due Process Clause. As Judge Gregg explained in Hudson:

> A debtor, in a proposed plan, should not attempt to pull a "fast one" upon a secured creditor by using the plan confirmation process to invalidate a lien. See, e.g., Cen-Pen, 58 F.3d at 93; accord, In re McMillan, 251 B.R. 484, 488-89 (Bankr.E.D.Mich.2000) (Spector, J.). However, when a debtor improperly utilizes the plan confirmation process to invalidate a lien (which should be determined by an adversary proceeding), the confirmation order should not automatically be set aside; some procedural action must first be taken by the affected secured creditor to obtain relief from the confirmation order.

Hudson, 260 B.R. at 442. Capitol has not sought such relief by filing an adversary proceeding,[9] and might be time-barred from doing so even if it could prove the confirmation order were "procured by fraud." See 11 U.S.C. § 1330(a); Fed. R. Bankr. P. 9024 (complaint to revoke Chapter 13 confirmation order under Fed. R. Civ. P. 60 must be filed within the 180 day period prescribed in 11 U.S.C. § 1330); but see Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle), 296 B.R. 146 (Bankr. N.D. Ohio 2003) (explaining that Section 1330 is not a bar to a Rule 60 motion challenging confirmation order as void), aff'd 307 B.R. 28 (6th Cir. B.A.P. 2004), aff'd 412 F.3d 679 (6th Cir. 2005). As far as Capitol's argument that the court ought not reward or encourage

---

[9] A creditor who seeks to revoke a Chapter 13 confirmation order must file an adversary proceeding. Fed. R. Bankr. P. 7001(5).

9

gamesmanship, the court notes, without so finding, that inferences from the present record might support a conclusion that Capitol exploited the Debtors' mistaken belief, plainly expressed on Schedule F, that Capitol was an unsecured creditor.[10]

On the one hand, if fraudulently procured plans are irrevocable after 180 days from entry of the confirmation order, perhaps procedurally defective plans must remain binding, too, provided the confirmation process satisfies the Due Process Clause.

Constitutional Issue: The Due Process Clause

The question of whether the Debtors' Plan and the court's Confirmation Order should be accorded finality ultimately depends upon whether the Plan and the confirmation process in this case afforded Capitol the constitutionally-mandated due process of law.

Recognizing the centrality of the Due Process Clause in any proceeding requiring finality, yet acknowledging the need for practicality and flexibility, the Supreme Court many years ago explained the Due Process Clause in this familiar and helpful passage:

> An elementary and fundamental requirement of due process in any proceeding which has to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950) (citations omitted).

Capitol does not dispute that it received notice of the Debtors' bankruptcy case or even that it

---

[10] By failing to object to the Plan, Capitol might have benefitted from stripping off Huntington National Bank's fourth mortgage and moving up in the state law priority scheme without calling attention to its own later-filed claim of interest. Indeed, if Capitol had objected to the Plan, the court could infer that its supposed lien, filed almost two years after Huntington National Bank's fourth priority mortgage, would have been stripped off too, for lack of collateral value to support it. 11 U.S.C. § 506(a); In re Fuller, 255 BR 300 (Bankr. W.D. Mich. 2000); Hudson, 260 B.R. at 433 (adversary proceeding not required to modify secured creditor's rights). Or, the Debtors might have commenced a pre-confirmation adversary proceeding to invalidate the Claims of Interest.

received a copy of the Plan that failed to list the company among the secured creditors. The question, then, is whether the notice Capitol received from the Plan was such that it "convey[ed] the required information," giving "due regard for the practicalities and peculiarities of the case." Id.

First, the court candidly acknowledges that the Plan does not mention Capitol or its supposed claim of interest by name. Nor, for that matter, does the Plan include language like the boiler-plate warnings in City of Flint v. Bekofske (In re McGee), Slip. Op. 08-14362, 2009 WL 724032 (E.D. Mich. March 18, 2009). Nevertheless, giving "due regard for the practicalities and peculiarities of the case," the Plan's specific enumeration of nine secured creditors other than Capitol, coupled with well-established interpretative principles,[11] give rise to the inescapable inference that Capitol would be treated as unsecured creditor under the Plan unless it objected to this treatment. With regard to the crucial issue as far as any secured creditor is concerned -- whether the Plan preserves the lien as required under 11 U.S.C. § 1325(a)(5)(B)(i)(I) -- the Plan is not ambiguous. Even if the Plan had been ambiguous on this score, and in the absence of controlling Sixth Circuit authority, the court would be inclined to find the Seventh Circuit's approach to the Due Process Clause in the reorganization context persuasive if not compelling. See In re Harvey, 213 F.3d 318, 322 (7th Cir. 2000) ("[if the secured creditor] was genuinely uncertain about the combined effect of the short and long forms (a total of four pages), it was obligated to raise this issue with the bankruptcy court prior to the original plan confirmation"); In re Penrod, 50 F.3d 459 (7th Cir. 1995) (chapter 11 case to similar effect); In re Pence, 905 F.2d 1107, 1109 (7th Cir. 1990) (chapter 13 prohibits a creditor from "stick[ing] its head in the sand and pretend[ing] it would not lose any rights by not participating in the proceedings"); cf. In re

---

[11] For one, *expressio unius est exclusio alterius.* In re Lopez, 372 BR 40, 51 (9th Cir. BAP (2007); Ex Parte Christy, 44 U.S. 292, 313 (1845).

Hudson, 260 B.R. at 440 (distinguishing Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995), and similar authorities, and observing that "[n]otice problems should be addressed in the proper context rather than being utilized as a reason to disregard the Bankruptcy Code-mandated binding effect of a confirmed plan").

The Supreme Court's oft-cited Mullane decision directs the court to consider whether Capitol received notice reasonably calculated to apprise it of the pendency of the confirmation hearing and afford the company an opportunity to present objections. Mullane, 339 U.S. at 314-15. Capitol admits that it received notice of the commencement of the case and the confirmation hearing, and the unchallenged proof of service confirms that the company was served with the Plan.[12] The quality of the notice "must be of such nature as reasonably to convey the required information." Id. Here, the Plan's omission of Capitol from the section dealing with secured creditors reasonably (if unwittingly) conveyed the required information -- no person reading the Plan could have assumed that the Debtors intended to retain Capitol's interest or accord the company any benefits as secured creditor.

Nevertheless, the court does not write on a clean slate. The court acknowledges the statement in Dewsnup, 502 U.S. at 417, and other authorities to the effect that liens pass through bankruptcy unaffected. Although the statement in Dewsnup was premised on the high court's understanding of pre-Code practice and the language of 11 U.S.C. § 506, the sentiment retains vitality at least to the extent that it recognizes greater protection for specific property interests such as liens than, say, more generalized property interest such as choses in action (or in the parlance of the Bankruptcy Code, "claims"). See In re Mansaray-Ruffin, 530 F.3d 230, 232 (3d Cir. 2008).

---

[12] Moreover, the docket establishes that the Bankruptcy Noticing Center or "BNC" gave Capitol notice that the court confirmed the Plan, though curiously Fed. R. Bankr. P. 2002(f)(7) does not require such notice. In any event, Capitol did not appeal from the confirmation order.

12

The court is also constrained by the Sixth Circuit's decision in <u>In re Reuhle</u>, 412 F.3d 679 (6th Cir. 2005), in which the Court of Appeals determined that the discharge of a student loan in a chapter 13 plan -- without an adversary proceeding -- violated the creditor's rights under the Due Process Clause, even though the student loan creditor had notice of the confirmation hearing and the plan but failed to object. In reaching its decision, the Sixth Circuit noted that the creditor did not raise its due process challenge until four years after the plan's confirmation, but the court explained that "[e]very person and entity is entitled to the prescribed level of notice for the process to be due and only thereafter may the coercive power of the government be used against them." <u>Id.</u> at 682, 684-85 (quotation marks omitted). According to the Sixth Circuit, because the debtor failed to commence an adversary proceeding and serve the creditor with a summons and a complaint, the discharge of the disputed debt in the plan could not be given effect, notwithstanding the Debtor's arguments premised on finality and notwithstanding the fact that the creditor had notice of the plan and confirmation hearing. <u>Id.</u> at 684-85. As the bankruptcy court observed:

> ECMC received notice of the confirmation hearing not notice of a dischargeability action. The procedure to discharge a student loan is clearly set out in the Bankruptcy Code and Rules and Debtor's failure to follow the process violated ECMC's right to due process of law. Section 523(a)(8) excepts student loans from discharge absent a showing of hardship. A debtor must bring an adversary proceeding to establish hardship. 11 U.S.C. § 523(a)(8) (West 2003); Fed.R.Bankr.P. 7001(6). An adversary proceeding is initiated by the filing of a complaint and a summons and service of process pursuant to Fed.R.Bankr.P. 7004(b). Fed.R.Bankr.P. 7003 and 7004. Because a student loan debt is only dischargeable through an adversary proceeding, creditors expect a summons and service of process if dischargeability of the student loan is being challenged. ECMC did not receive a summons which would have adequately informed the creditor that its debt was subject to dischargeability at confirmation, therefore, ECMC did not receive due process of law.

In re Reuhle, 296 B.R. 146, 157 (Bankr. N.D. Ohio 2003), aff'd 307 B.R. 28 (6th Cir. BAP 2004), aff'd 412 F.3d 679 (6th Cir. 2005). The Sixth Circuit could not have approved of this analysis in stronger terms than it employed in its opinion, and if the analysis applies with respect to determinations of dischargeablity, it most certainly must apply to determinations regarding the validity, priority, or extent of Capitol's interest, since both determinations require an adversary proceeding. See Fed. R. Bankr. P. 7001(2) and (6). Evidently, the requirement of an adversary proceeding has constitutional significance in our Circuit, cannot be waived by failing to object to plan confirmation, and trumps the finality that Congress prescribed for confirmed Chapter 13 plans when it enacted 11 U.S.C. § 1327 and 1330. The court believes that the Sixth Circuit's decision in Reuhle controls the outcome here as a matter of constitutional law.

## Conclusion

If the court were writing on a clean slate, it would have found that Capitol received constitutionally sufficient notice that its interest was in jeopardy, and that it waived the right to insist upon an adversary proceeding by failing to object to the Debtors' Plan. In addition, under the circumstances of this case, where the Debtors performed under their Plan for nearly five years, eventually making all payments, principles of finality and the *res judicata* effect of the Plan ought to have foreclosed Capitol from asserting its interest at this time. If the court credits the Debtors' assertion that they were unaware of Capitol's Claim of Interest at the time of confirmation, they can hardly be faulted for proposing a Plan that did not include Capitol as a secured creditor.

Though the Debtors probably should have commenced an adversary proceeding after Capitol objected to the sale of the Vacant Land, Capitol also ignored the court's procedures by failing to object to confirmation, failing to appeal the confirmation order, and failing to seek

14

relief under Fed. R. Bankr. P. 9024. Had Capitol objected, the Debtors would have likely responded by including in their Plan a provision stripping off Capitol's lien as unsupported by collateral value, at least with respect to the Residence which appeared to be fully encumbered at confirmation. See, e.g., In re Fuller, 255 BR 300 (Bankr. W.D. Mich. (2000); In re Phillips, 224 BR 871 (Bankr. W.D. Mich. 1998); see also In re Mansaray-Ruffin, 530 F.3d 230, 236 (3rd Cir. 2008) (distinguishing lien stripping cases under 11 U.S.C. § 506).

Nevertheless, the court's view of the equities of the case and its concern about finality must yield to the Due Process Clause as interpreted in our Circuit. In re Hudson, 260 B.R. at 435 ("Even if a judge believes that the statutory provisions and complementary rules may result in an unfair result in a given instance, that belief is insufficient to ignore the statutory language or attempt to create an alternative that seems palliatively just."). Today, the court decides only that the Plan did not invalidate Capitol's Claims of Interest in the Vacant Land or Residence. Other arguments involving the validity, priority, or extent of the lien, the availability of collateral to support the lien under 11 U.S.C. § 506, state real estate or insurance law, or other doctrines such as laches, are preserved for later decision.

Accordingly, the court will enter a separate order denying the Motion, without prejudice to the commencement of appropriate proceedings to resolve this dispute. To the extent that the parties intend to resolve claims to the proceeds of the Vacant Land, the court believes that proceedings must include the Chapter 13 Trustee, because the Plan dedicated the sale proceeds to the payment of unsecured claims.

Date: August 20, 2009

Scott W. Dales
United States Bankruptcy Judge

15